UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------X
DEBORAH KESSLER,

           : Case No. 12cv8086

      Plaintiff,

           : **COMPLAINT**

  -against-

           : **Trial by**
           **Jury Demanded**

RICHARD SCHAEFFER, BRIAN FERDINAND,
LIQUID HOLDINGS GROUP, LLC,     :
SHAF HOLDINGS, LLC and SCHAEFFER
HOLDINGS LLC,           :

      Defendants.  :
------------------------------------------------X

    Plaintiff Deborah Kessler, by her attorney, Edward Weissman, Esq., as and for her Complaint against the defendants, respectfully sets forth as follows:

### THE PARTIES

    1. Plaintiff Deborah Kessler ("Kessler") is, and at all material times hereinafter mentioned was, a citizen of the State of New Jersey.

    2. Upon information and belief, defendant Richard Schaeffer ("Schaeffer") is, and at all material times hereinafter mentioned was, a citizen of the State of New York, and resides and/or is employed within the Southern District of New York.

    3. Upon information and belief, defendant Brian Ferdinand ("Ferdinand") is, and at all material times hereinafter mentioned was, a citizen of the State of New York, and resides and/or is employed within the Southern District of New York.

4. Upon information and belief, defendant Liquid Holdings Group LLC ("LHG") is, and at all material times hereinafter mentioned was, a limited liability company duly organized and existing under and by virtue of the laws of the State of Delaware, and maintains offices within the Southern District of New York where its members are employed and/or reside.

5. Upon information and belief, defendant Shaf Holdings, LLC ("Shaf Holdings") is, and at all material times hereinafter mentioned was, a limited liability company duly organized and existing under and by virtue of the laws of the State of New York, and maintains offices within the Southern District of New York where its members are employed and/or reside.

6. Upon information and belief, defendant Schaeffer Holdings, LLC ("Schaeffer Holdings") is, and at all material times hereinafter mentioned was, a limited liability company duly organized and existing under and by virtue of the laws of the State of Delaware, and maintains offices within the Southern District of New York where its members are employed and/or reside.

## JURISDICTION AND VENUE

7. Jurisdiction is properly founded upon 28 U.S.C. § 1332(a) because the plaintiff and each of the defendants are citizens of different States, and the amount in controversy, exclusive of interest and costs, exceeds $75,000.00.

8. Venue is properly laid in the Southern District of New York, pursuant to 28 U.S.C. § 1391, where all of the

defendants either reside or maintain places of business, and where a substantial portion of the acts and omissions giving rise to the Claims for Relief sued upon herein all arose.

### ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

9. In or about February, 2009, Kessler was introduced to Schaeffer and was hired by Schaeffer to begin work at a restaurant in Manhattan owned by Schaeffer.

10. Within a short period of time, Kessler was promoted to co-marketing director at the restaurant establishment, and Kessler worked in such capacity until December, 2009, when the restaurant closed.

11. Prior to the restaurant closing Schaeffer approached Kessler about continuing to work for him and his various businesses.

12. Kessler agreed to do so, and began pursuing various roles for defendant Schaeffer as his personal assistant and project manager relative to defendant Schaeffer's multiple commercial ventures. Kessler ultimately earned defendant Schaeffer's respect and confidence to the extent that Kessler became a signatory on various accounts, was made privy to various commercial strategies and decisions, as well as aspects of Schaeffer's private life, and was entrusted to do research and to undertake various assignments critical to promoting the success of Schaeffer's various ventures, including interacting with attorneys, accountants and other professionals.

13. During 2010 through 2012, Kessler devoted a good portion of her time, often working twelve to fifteen hours a day, six or seven days a week, serving and promoting defendant Schaeffer's various business interests, and the scope of her work expanded with the passage of time.

14. The compensation afforded to Kessler by defendant Schaeffer was, at times, meager and limited. However, in order to induce Kessler to continue to devote her full attention to defendant Schaeffer's business interests, defendant Schaeffer promised Kessler greater compensation and security by offering her ownership interests in various ventures pursued by Schaeffer or to be pursued by Schaeffer, in consideration of which Kessler would continue to work for Schaeffer and his various businesses.

15. In 2011, Kessler and defendant Schaeffer came to meet defendant Ferdinand and became acquainted with and interested in defendant Ferdinand's business ventures. Kessler then promoted a business relationship between defendants Schaeffer and Ferdinand.

16. Shortly thereafter, Kessler began to do work for defendant Ferdinand in connection with defendant LHG and Liquid Trading International as well as defendant LHG subsidiary entities known as Liquid Futures, Liquid Prime Services, Green Mountain Analytics, Liquid Trading Institutional and FundSolve, entities in which defendants Schaeffer and Ferdinand both shared ownership interests.

4

17. Defendant Schaeffer was thereafter named Executive Chairman of defendant LHG; Kessler was thereafter named as Managing Director of defendant LHG.

18. Among the contractual commitments made to Kessler by defendant Schaeffer in 2011 and 2012, in Schaeffer's capacity as Executive Chairman, were the following:

(a) In recognition of the valuable services performed by Kessler for defendants Schaeffer, Ferdinand and LHG, defendant Schaeffer, pursuant to agreements made with Kessler dated August 10, 2011 and February 17, 2012, transferred to Kessler 10% of defendant Schaeffer's total economic interest in defendant LHG;

(b) In 2011, Kessler was made a member of and given ownership interests in defendants LHG, Schaeffer Holdings and Shaf Holdings, in recognition of the valuable, faithful and substantial contributions made by Kessler for the benefit of defendants Schaeffer, Ferdinand, LHG and those various business entities. Kessler became a signatory to the Operating Agreements for Schaeffer Holdings and Shaf Holdings;

(c) Designated Kessler as a junior partner in defendant Schaeffer's various commercial ventures, and held out Kessler to all as being his partner; and

(d) Committed to pay Kessler a substantial salary with bonuses and incentives.

19. Among the commitments made to Kessler by defendant Schaeffer in his individual capacity, were the following:

5

  (a) Committed to pay to Kessler a substantial commission of at least $50,000.00 for her prominent role in procuring a purchaser of a horse farm owned by defendant Schaeffer, in recognition of the fact that Kessler played an instrumental role in procuring the purchaser; and

  (b) Designated Kessler as a junior partner in defendant Schaeffer's various commercial ventures, and, at all times, held her out and introduced her as his business partner.

  20. Kessler continued to devote her full efforts for the benefit of defendants Schaeffer, Ferdinand, LGH and their various businesses.

  21. Kessler continued to work extremely hard for each of the defendants, regularly working long hours, often seven days a week, and was on call to defendants Schaeffer, Ferdinand and LHG at all times.

  22. Beginning in early to mid 2012, Kessler detected a noticeable change in treatment and attitude towards her by defendants Schaeffer and Ferdinand, particularly defendant Schaeffer.

  23. As a result of a physical injury sustained by Kessler, Kessler was required to utilize a kneeling chair at work to ease physical discomfort.

  24. Schaeffer intentionally positioned his desk directly behind Kessler's desk so as to be able to stare at parts of Kessler's body, and defendants Schaeffer and Ferdinand began

6

making lewd and inappropriate comments to Kessler directly and about Kessler to others, to the extreme embarrassment of Kessler who requested that such comments and activities cease. Such comments and activities continued. Kessler focused on her job duties.

25. Around this time, defendant Schaeffer made overt sexual advances towards Kessler, suggesting that Kessler join his book of conquests; defendant Ferdinand even suggested that Kessler pleasure the business clients. Kessler demanded that such comments and conduct cease, but they continued. Kessler focused on her job duties.

26. In late August of 2012, defendants Schaeffer and Ferdinand stepped up their abuse, harassment and intimidation of Kessler to new levels.

27. On August 27, 2012, defendants Schaeffer and Ferdinand confronted Kessler, who is married, instructing that Kessler not plan on having a family anytime soon unless same was first approved by defendants Schaeffer and Ferdinand.

28. Shocked and upset by this highly offensive statement, Kessler informed defendant Schaeffer that she was in her early thirties and that she and her husband planned to start a family.

29. On August 28, 2012, one day after the incident described in the two preceding paragraphs, defendant Schaeffer informed Kessler by telephone that he and defendant Ferdinand were

7

unilaterally rescinding Kessler's equity interests in the various companies described above, and gave no reason for doing so.

30. In response, Kessler told defendant Schaeffer that there was no basis for diminishing her equity interests in the various entities which Kessler has worked hard to secure, following which defendant Schaeffer inquired as to whether Kessler had reconsidered her decision to start a family. When Kessler said no, defendant Schaeffer then berated Kessler over the phone. Kessler became visibly upset at work.

31. From August 28, 2012 through September 4, 2012, defendants Schaeffer and Ferdinand continued their deliberate and ongoing course of conduct designed to humiliate, intimidate, bully and harass Kessler, including, but not limited to defendant Schaeffer's screaming at her in the office, and by making insulting comments to her and about her, many of which were overheard by business colleagues.

32. This pattern of abuse and intimidation became so intolerable that, on September 4, 2012, Kessler packed up, fled the office and informed defendant Schaeffer by phone that she was leaving. Kessler did not return to work.

33. Thereafter, the defendants continued their harassment of Kessler, sending her and her husband, Daniel, threatening e-mails falsely accusing Kessler of having "destroyed" documents and having engaged in all kinds of improprieties, none of which had even a shred of truth.

8

34. Kessler was so upset by the onslaught pursued by defendants Schaeffer and Ferdinand that she was forced to seek professional assistance.

35. At the same time that the defendants were engaging in such irresponsible and reprehensible conduct, the defendants offered to restore a portion of Kessler's equity interests in the various entities provided that Kessler would return to work for defendants Schaeffer, Ferdinand and LFG.

36. When Kessler refused to accede to such unthinkable demand and such condition, the defendants continued their campaign of harassment towards her.

37. While employed by the defendants, Kessler fulfilled all contractual obligations required of her under all agreements entered into by her.

### FIRST CLAIM FOR RELIEF

38. Defendant Schaeffer has breached the August 11, 2011 and February 17, 2012 agreements entered into with Kessler by failing to honor its terms.

39. Kessler has been damaged by such defaults.

40. Kessler fulfilled all contractual obligations required of her thereunder.

41. By reason of defendant Schaeffer's defaults thereunder, Kessler has been damaged in an amount to be determined at the trial of this action, but believed to be in excess of $3,000,000.00 with interest.

## SECOND CLAIM FOR RELIEF

42. The defendants herein breached the Shaf Holdings Operating Agreement executed by the parties by failing to honor its terms.

43. Kessler has been damaged by such default.

44. Kessler fulfilled all contractual obligations required of her.

45. As a result thereof, Kessler has been damaged in an amount to be determined at the trial of this action, but believed to be in excess of $1,500,000.00.

## THIRD CLAIM FOR RELIEF

46. The defendants breached the Schaeffer Holdings Operating Agreement by failing to honor the terms thereof.

47. Kessler has been damaged by such default.

48. Kessler fulfilled all contractual obligations required of her.

49. By reason of the foregoing, Kessler has been damaged in an amount to be determined at trial of this action, but believed to be at least $1,500,000.00 with interest.

## FOURTH CLAIM FOR RELIEF

50. The defendants named herein agreed that Kessler would have an equity stake in LHG based upon Kessler's strong performance in successfully forming, guiding and promoting LHG and its various subsidiaries which include, Liquid Futures, Liquid

Prime Services, Green Mountain Analytics, Liquid Trading Institutional and FundSolve.

51. The defendants breached that commitment, and Kessler has been damaged thereby.

52. Kessler fulfilled all contractual obligations required of her.

53. By reason of the foregoing, Kessler has suffered damages in the amount of at least $5,000,000.00 with interest, but which precise sum will be proven at the trial of this action.

### FIFTH CLAIM FOR RELIEF

54. The conduct engaged in by defendants Schaeffer and Ferdinand towards Kessler is and was reprehensible, immoral, punitive and extreme, and was designed solely to harm Kessler.

55. Defendants Schaeffer and Ferdinand informed Kessler that she could not have a family until such time as said defendants determined that she could.

56. Such outrageous statement by defendants Schaeffer and Ferdinand was designed to demean, belittle and control Kessler and treat her as if she was not a person worthy or capable of making the most personal of decisions for herself. It is also indicative of said defendants' low regard for women as no male colleague was ever subject to such conditions or treatment.

57. When Kessler objected to such outrageous directive, defendants Schaeffer and Ferdinand stripped Kessler of her equity

11

interests, threatened her position and created such a hostile environment that Kessler could no longer work for the defendants.

58. In addition, when Kessler suffered a physical injury which required that she utilize a kneeling chair at her desk, defendants made inappropriate, vile and sexist comments which made Kessler feel demeaned and humiliated. Defendant Schaeffer positioned his desk immediately behind Kessler's desk so as to intimidate Kessler by observing her body and making lewd comments.

59. Defendants Schaeffer and Ferdinand made lewd, uncouth, and overtly inappropriate comments to Kessler directly and about Kessler to others in the office causing extreme upset and embarrassment to Kessler.

60. The aforesaid incidents created such a hostile work environment that Kessler could no longer continue working with the defendants.

61. Kessler was the lone female partner, managing director and senior employee employed by the defendants, and no male counterpart was ever treated in such an offensive manner.

62. The aforesaid conduct by defendants Schaeffer and Ferdinand violates both New York City Human Rights Law (Administrative Code of the City of New York § 8-107(1)(a) et seq.) and New York State Human Rights Law § 296 which are designed to address and remedy unlawful discriminatory behavior and

practices based upon, among other things, gender, sex, marital status and age, and provides remedies for the victim of same.

63. By reason of the foregoing, Kessler has been damaged by the defendants based upon violations of these statutes in an amount to be proven at the trial of this action, plus attorneys' fees and punitive damages.

### SIXTH CLAIM FOR RELIEF

64. As between Kessler and defendants Schaeffer and Ferdinand, there existed a fiduciary, confidential or special relationship.

65. As a partner of defendants Schaeffer and Ferdinand, an indirect member of LHG, a direct member of Schaeffer Holdings and Shaf Holdings, and as an executive employee and managing director, the defendants named herein owed to Kessler a fiduciary obligation to act at all times in her best interests.

66. The conduct engaged in by defendants Schaeffer and Ferdinand, as described above, breached that fiduciary duty and trust relationship by failing to honor commitments and obligations owed to Kessler; arbitrarily stripping Kessler of her ownership interests and position; and by demeaning, harassing and humiliating Kessler and creating a hostile work environment designed to drive her out.

67. By reason of the foregoing, Kessler has been damaged in the amount of at least $3,000,000.00 with interest, plus punitive damages in an amount to be determined at trial.

**SEVENTH CLAIM FOR RELIEF**

68. The vile, extreme and outrageous conduct engaged in by defendants Schaeffer and Ferdinand, as described in this complaint, was done intentionally, maliciously and was intended to cause and did cause severe emotional distress to the plaintiff.

69. The result of such conduct by defendants Schaeffer and Ferdinand is that the plaintiff, who did nothing more than work extremely hard for defendants Schaeffer and Ferdinand and their businesses, now requires medical treatment and attention to deal with the severe emotional distress visited upon her by said defendants.

70. By reason of the foregoing, Kessler has suffered damages in the amount of $2,000,000.00, and further seeks punitive damages against defendants Schaeffer and Ferdinand to ensure that they do not do to others what was done to Kessler.

**EIGHTH CLAIM FOR RELIEF**

71. As between Kessler and defendants Schaeffer and Ferdinand, at all times relevant herein there existed a relationship of trust and a fiduciary duty.

72. By reason of the foregoing, Kessler is entitled to a full accounting from the defendants of all monies due and owing to her.

WHEREFORE, plaintiff Deborah Kessler demands judgment against the defendants, as follows:

(a) On her First Claim for Relief, in the principal sum of $3,000,000.00 with interest thereon accrued and accruing;

(b) On her Second Claim for Relief, in the principal sum of $1,500,000.00 with interest thereon accrued and accruing;

(c) On her Third Claim for Relief, in the principal sum of $1,500,000.00 with interest thereon accrued and accruing;

(d) On her Fourth Claim for Relief, in the principal sum of $5,000,000.00 with interest thereon accrued and accruing, plus attorneys' fees and punitive damages in an amount to be proven at the trial of this action;

(e) On her Fifth Claim for Relief, in an amount to be proven at the trial of this action, together with interest thereon accrued and accruing, plus attorneys' fees and punitive damages in an amount to be proven at the trial of this action;

(f) On her Sixth Claim for Relief, in the principal sum of $3,000,000.00 with interest thereon accrued and accruing, plus attorneys' fees and punitive damages in an amount to be proven at the trial of this action;

(g) On her Seventh Claim for Relief, in the principal sum of $2,000,000.00 with interest thereon accrued and accruing, plus punitive damages in an amount to be proven at the trial of this action;

(h) On her Eighth Claim for Relief, for an accounting of all monies due and owing to Kessler by the defendants; together with such other, further and different relief as to the Court may

seem just and proper, including the costs and disbursements of this action.

Dated: New York, New York
       November 5, 2012

LAW OFFICES OF EDWARD WEISSMAN

By: _____
Edward Weissman, Esq. (EW-1340)
Attorney for Plaintiff
Deborah Kessler
60 East 42nd Street, Ste. 557
New York, New York 10165
Tel.: (212) 937-1520
